**Opinion issued February 9, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00148-CR

————————————

**JOSHUA RAY GUTIERREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1457918**

---

### O P I N I O N

The State charged Appellant, Joshua Ray Gutierrez, with the felony offense of assault by impeding breathing of a person with whom he had a dating relationship.[1] The jury found Appellant guilty of the lesser-included offense of

---

[1]     *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B) (Vernon Supp. 2016).

misdemeanor assault.[2]  The trial court assessed punishment at one year's confinement, suspended the sentence, and placed Appellant on community supervision for one year.  In three issues, Appellant argues the trial court abused its discretion by allowing the officer to testify about what the complainant had told him and by admitting the 911 call reporting the offense.  Appellant argues the testimony about the complainant's statements and the 911 call violated his Sixth Amendment right to confront his witnesses and were hearsay.

We reverse and remand.

## Background

On, February 12, 2015, Maria Rodriguez called 911.  She reported that her daughter, Emily Rodriguez, had been assaulted by Emily's boyfriend, Appellant. Maria reported that the offense had just occurred in front of their house. Emily reported to the 911 operator that Appellant had choked her, pulled her hair, and left scratch marks on her neck.  When asked, Emily said she did not need medical attention.  The operator obtained details about Appellant's appearance as well as the make, model, and color of his car.  Maria told the operator that Appellant lived a few streets away.

---

[2]  *See id.* § 22.01(a)(1).

Deputy S. Deliphose arrived on the scene seven to ten minutes later. Emily told Deputy Deliphose that she and Appellant had been driving in Appellant's car. They got into an argument. When they arrived at Emily's house, Appellant stopped. The argument continued, and Emily told Deputy Deliphose that Appellant then grabbed her hair and pulled her head to his knee. Emily reported that Appellant then grabbed her neck with both hands and began to squeeze, impeding her breathing. Emily told Deputy Deliphose that Appellant choked her for five to ten seconds. Emily broke free from Appellant's hold and began to leave the car. Appellant started driving away while Emily was trying to leave the car.

Deputy Deliphose requested EMS to come to the scene. When they arrived, Emily again declined medical attention.

After he spoke to Emily, Deputy Deliphose returned to his car. While he was walking back, he saw Appellant's car pass along the main road that intersected the street on which Emily lived. While Deputy Deliphose was in his car, Appellant drove up and parked behind him. Deputy Deliphose talked to Appellant. According to Deputy Deliphose, Appellant said that he had gotten "into an altercation with his girlfriend, saw my police vehicle, and decided to come back." Deputy Deliphose then arrested Appellant.

The only person to testify at trial was Deputy Deliphose. Through him, the State sought the admission of the recording of the 911 call and his testimony of what

3

Emily had reported to him. At the start of trial, outside the presence of a jury, Appellant raised objections to the admission of the 911 call as hearsay and as a violation of the Confrontation Clause. The trial court overruled the objections.

During the State's examination of Deputy Deliphose, the State announced at a bench conference its intent to ask Deputy Deliphose about the details of the offense and surrounding events that were told to him by Emily. Appellant raised hearsay and Confrontation Clause objections. The trial court overruled the objections and held that Emily's statements were nontestimonial.

Deputy Deliphose testified that Emily ultimately provided a written statement. He testified that the purpose of the written statement was to obtain accurate and detailed information about what had occurred. The State asked if Emily's written statement was consistent with what she had told him. He testified that it was.

During Appellant's cross-examination of Deputy Deliphose, the trial court admitted Appellant's sole exhibit. The exhibit is 17 pages long and includes, in part, conversations Deputy Deliphose had with other officers during the investigation of the offense. Appellant used the exhibit to show that Deputy Deliphose had made some jokes to the other officers during the investigation.

On redirect, the State pointed out another passage in the exhibit to Deputy Deliphose. The passage states, "REPT ADV 19YOA DAUGHT, EMILY RODRIGUEZ, TOLD REPT THAT HER 18YOA HM BOYF, JOSHUA,

4

CHOKED REPT AND PULLED HER HAIR / BOYF FLED ORANGE 2003 NISS 350Z / EMS REFUSED." Deputy Deliphose testified what the passage meant. "It says -- well, we understand but, Reportee advised 19-year-old daughter, Emily Rodriguez, told reportee that her 18-year-old Hispanic male boyfriend, Joshua, choked reportee and pulled her hair. Boyfriend, orange 2003 Nissan 350Z. EMS refused."

**Confrontation Clause**

In his first issue, Appellant argues the admission of the 911 call violated the Confrontation Clause of the Sixth Amendment. In his third issue, Appellant argues allowing Deputy Deliphose to testify about what Emily told him violated the Confrontation Clause.

**A.    Standard of Review & Applicable Law**

"The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]'" *Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010) (quoting U.S. CONST. amend. VI). Its main purpose is to afford the defendant "the opportunity of cross-examination because that is 'the principal means by which the believability of a witness and the truth of his testimony

5

are tested.'" *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974)).

Once a defendant raises a Confrontation-Clause objection, the burden is placed on the State to establish either (1) that the evidence does not contain testimonial hearsay statements or (2) that the evidence does contain testimonial hearsay statements but that such statements are nevertheless admissible. *De La Paz v. State*, 273 S.W.3d 671, 681–82 (Tex. Crim. App. 2008). The State argued, and the trial court found, that the 911 call and Emily's statements to Deputy Deliphose were admissible because they were nontestimonial. Whether a statement is testimonial or nontestimonial is a question of law that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Our review is based on the primary basis for the statement. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273 (2006). Statements are nontestimonial when "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* In contrast, statements are testimonial, "when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822, 126 S. Ct. at 2273–74.

In determining whether a statement is testimonial, we review the objective purpose of the statement, not the declarant's expectations. *Coronado v. State*, 351

S.W.3d 315, 324 (Tex. Crim. App. 2011). "If the objective purpose of the interview is to question a person about past events and that person's statements about those past events would likely be relevant to a future criminal proceeding, then they are testimonial." *Id.*

> We consider a non-exhaustive list of factors to determine
>
> whether statements were made during an ongoing emergency: 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008) (citing *Davis*, 547 U.S. at 829–30, 126 S. Ct. at 2278).

## B.    Waiver

The State argues Appellant waived his issues on appeal because he requested the same evidence to be admitted during his cross-examination of Deputy Deliphose. During Appellant's cross-examination of Deputy Deliphose, the trial court admitted Appellant's 17-page exhibit, which includes, in part, conversations Deputy Deliphose had with other officers during the investigation of the offense. Appellant used the exhibit to show that Deputy Deliphose had made some jokes to the other officers during the investigation.

7

On redirect, the State pointed out another passage in the exhibit to Deputy Deliphose. The passage states, "REPT ADV 19YOA DAUGHT, EMILY RODRIGUEZ, TOLD REPT THAT HER 18YOA HM BOYF, JOSHUA, CHOKED REPT AND PULLED HER HAIR / BOYF FLED ORANGE 2003 NISS 350Z / EMS REFUSED." Deputy Deliphose testified what the passage meant. "It says -- well, we understand but, Reportee advised 19-year-old daughter, Emily Rodriguez, told reportee that her 18-year-old Hispanic male boyfriend, Joshua, choked reportee and pulled her hair. Boyfriend, orange 2003 Nissan 350Z. EMS refused." The State argues that, because Appellant's exhibit contained that passage, his objections to the 911 call and Deputy Deliphose's testifying about Emily's statements were waived.

We note at the outset that this passage does not accurately describe the offense. Context indicates that the "reportee" in the passage was Emily's mother, Maria. The passage asserts that Appellant choked Maria, not Emily. Any clarification of this misidentification had to come from the evidence to which Appellant objected.

Even if the passage could be construed to describe an assault on Emily, it is insufficient to waive Appellant's complaints. In *Johnson*, the defendant objected to the admission of extraneous offenses, including the defendant's juvenile delinquency adjudications, during the punishment phase due to the State's failure to

8

provide proper notice.  *Johnson v. State*, 84 S.W.3d 726, 728 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).  For the juvenile offenses, the State argued the complaint was waived because of a statement by the stepfather during cross-examination.  *Id.* at 729.  The cross-examination consisted of the stepfather briefly acknowledging that the defendant had committed burglary and was incarcerated.  *Id.*  We held that this brief mention of the offense did not compare to the level of detail presented by the State.  *Id.*  Accordingly, the brief mention of the offense did not waive the error.  *Id.*

The same holding applies here.  The brief passage misstates the reported offense and offered no details.  In contrast, the 911 call and Deputy Deliphose's testimony about Emily's statements provide the only detail and context provided to the jury.  We hold the brief passage in Appellant's 17-page exhibit did not waive any error based on Appellant's Confrontation Clause objections.

## C.    Error

The State argued and the trial court found that the 911 call and Emily's statements to Deputy Deliphose were nontestimonial.  To determine if the 911 call and Emily's statements were nontestimonial, we consider whether the primary, objective purpose of the call and the statements were to report an ongoing emergency.  *See Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74; *Coronado*, 351 S.W.3d at 324.  Factors relevant to this determination include

9

1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Vinson*, 252 S.W.3d at 339.

The evidence shows that both the 911 call and Emily's statements to Deputy Deliphose were focused on what had occurred in the past without any expressed concern or discussion of an ongoing emergency. Emily declined medical attention on the 911 call and when EMS arrived at the scene. *Cf. Avant v. State*, 499 S.W.3d 123, 129 (Tex. App.—San Antonio 2016, no pet.) (holding conversation focusing "on information regarding her mother's condition, safety, and injuries" indicated ongoing emergency).

For the 911 call, the 911 operator asked for the make, model, and color of Appellant's car, explaining she did not need the license plate. Even so, Emily spent some time going through pictures on her phone to find the license plate number and give it to the operator. Focus on details that were not immediately necessary weighs against a finding that Emily was experiencing an ongoing emergency. *See id.*

For Emily's statements to him, Deputy Deliphose testified that Emily later provided a written statement. He testified that the purpose of the written statement was to obtain accurate and detailed information about what had occurred. The State

10

asked if Emily's written statement was consistent with what she had told him. He testified that it was. This indicates that Emily's statements were concerned with the details of the offense, not an ongoing emergency. *Cf. Dixon v. State*, 244 S.W.3d 472, 484–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding reporting that defendant had threatened to kill her, that her door did not lock well, that defendant had broken her finger, and that complainant asked how long it would take for police to arrive establish primary purpose was cry for help even though complainant claimed she could wait until next day to file report).

Appellant drove away after the offense. *See Vinson*, 252 S.W.3d at 339–40 (holding defendant's presence during complainant's discussion with officer can support finding that statements were nontestimonial). No one expressed concern that Appellant would return. Even when Appellant did return, he parked behind Deputy Deliphose's patrol car and voluntarily approached him. *See Bates v. State*, 494 S.W.3d 256, 266 (Tex. App.—Texarkana 2015, pet. ref'd) (holding admission of dash cam video violated Confrontation Clause when defendant was present at scene but "quickly acquiesced to law enforcement's authority.").

The State argues that there is evidence that there was an ongoing emergency because Maria reported on the 911 call that Appellant lived a few streets away. While this statement is relevant in evaluating the testimonial nature of the evidence, our focus is on the primary, objective purpose of the statements in the evidence. *See*

11

*Davis*, 547 U.S. at 822, 126 S. Ct. at 2273–74; *Coronado*, 351 S.W.3d at 324. No one expressed any concern that Appellant would return and the focus of the discussions in the 911 call and Emily's statements were on what had already happened as opposed to what was happening or might happen in the near future.

We hold the 911 call and Deputy Deliphose's testimony about what Emily told him were testimonial in nature. Accordingly, their admission violated Appellant's rights under the Confrontation Clause.

## D. Harm

For violations of constitutional rights, we must reverse the judgment unless we can "determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). In reviewing harm for violations of the Confrontation Clause, we consider "1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007).

Deputy Deliphose was the only person to testify at Appellant's trial. Deputy Deliphose did not witness the offense. The only physical evidence was photographs of red marks around Emily's neck and of her bloodshot eyes. The State provided no

12

evidence other than the 911 call and Deputy Deliphose's testimony of Emily's statements to establish who committed the offense, when the offense occurred, or the circumstances surrounding the offense. Given that the State almost completely depended on the evidence in question to develop its case against Appellant, we must conclude that the evidence contributed to Appellant's conviction and punishment. *See* TEX. R. APP. P. 44.2(a). Accordingly, we reverse Appellant's conviction.

We sustain Appellant's first and third issues.[3]

## Conclusion

We reverse the judgment of the trial court and remand for a new trial.

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Lloyd.

Publish. TEX. R. APP. P. 47.2(b).

---

[3] Because it is not necessary for the disposition of this appeal, we do not reach Appellant's second issue, arguing that the 911 call was inadmissible because of hearsay. *See* TEX. R. APP. P. 47.1.