**Opinion issued April 2, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00884-CR

————————————

**JAMES VERDINE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1605457**

---

## MEMORANDUM OPINION

James Verdine was convicted of aggravated robbery with a deadly weapon by a Harris County jury and sentenced to sixty years' confinement. In five issues, Verdine challenges the trial court's rulings to (1) deny his motion for directed verdict, (2) deny his motion for mistrial based on objectionable witness testimony,

(3) deny his motion for mistrial based on objectionable jury argument, (4) deny his objection to surveillance video evidence for lack of authentication, and (5) deny his objection to a 9-1-1 recording on the basis that the admission of evidence violated his Sixth Amendment right to confront his accuser.

We affirm.

## Background

Zone D'Erotica was staffed by only one employee one February evening, when a man with a gun met the sole employee near the entrance, pointed a gun at her and led her to the cash register. The robber stole money from the cash register and fled on foot. The business's surveillance camera captured a few seconds of the events, as the two moved from the store entrance deeper into the building. The store employee called 9-1-1 after the robbery. She stated that the business had been robbed about five minutes earlier, she was the only employee there at the time, and the robber fled on foot toward an apartment complex nearby. She described the robber's general appearance to the operator.

Officer S. Fernandez was patrolling the area. Within minutes, he saw James Verdine on foot 150 feet from Zone D'Erotica. Verdine was sweaty, which indicated to Fernandez that he had been running. Fernandez brought Verdine back to the store for the employee to identify; the employee could not identify him.

Sergeant C. Malveaux investigated the robbery. He interviewed the store employee, watched the surveillance video he had asked the store manager to download, and interviewed Verdine, who remained a suspect. According to Malveaux, Verdine's physical appearance during the interview was very similar to the physical appearance of the man in the surveillance video. Malveaux noted that both wore the same shoes.

The store employee did not appear at trial to testify. Her 9-1-1 call was played for the jury over Verdine's objection that admitting the evidence violated his constitutional right to confront his accuser. The surveillance video recording was also played over Verdine's objection that it had not been adequately authenticated.

The jury convicted Verdine of aggravated robbery. After receiving enhancement evidence of earlier convictions, the jury selected a punishment of 60 years' confinement. The trial court entered a judgment of guilty and sentenced Verdine to 60 years' confinement.

Verdine appeals.

## Denial of Directed Verdict

When an appellant in a criminal case raises an issue that, if successful, would result in a remand for a new trial and another issue that, if successful, would result in an acquittal, we will consider first the issue that could lead to an acquittal.

3

*See Lucas v. State*, 245 S.W.3d 611, 612 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Accordingly, we review, first, Verdine's issue challenging the denial of his motion for directed verdict.

## A. Standard of review and applicable law

A challenge to a trial court's denial of a motion for directed verdict is reviewed under the same standard used to review legal sufficiency. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). Legal sufficiency of the evidence is reviewed under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from that evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to witness testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). The jury may choose to believe or disbelieve any part of a witness's testimony. *See Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—

Houston [1st Dist.] 2005, no pet.). Inconsistencies or contradictions in a witness's testimony do not destroy that testimony as a matter of law. *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970).

We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State,* 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the jurors. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

A person commits the offense of robbery if, in the course of committing theft, and with the intent to obtain or maintain control of the property, he either (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE § 29.02(a). The offense is a second-degree felony. *Id.* § 29.02(b). There are several aggravating factors that can elevate

the offense to first-degree aggravated robbery, including if the person commits the offense of robbery while using or exhibiting a deadly weapon. *Id.* § 29.03(a)(2).

**B.    The trial court did not err in denying Verdine's motion for directed verdict**

Verdine argues the State failed to present even a scintilla of evidence that the store employee "exhibited any sign of fear." First, the employee did not testify at trial to provide evidence of fear. Second, the audiotape of the employee's 9-1-1 call, which was played for the jury,[1] that provided no evidence of fear in that the call was made after the robber had left, the employee's voice was steady and calm, and the employee said nothing about being injured or fearful.

The element for which Verdine argues there is legally insufficient evidence can be met in one of two way: with evidence the robber, with the appropriate mens rea, either (1) caused bodily injury or (2) threatened or placed another in fear of imminent bodily injury or death. *Id.* § 29.02(a). The State attempted to meet this element with evidence fitting within the second category of "threatened or placed another in fear." Verdine argues there is no evidence of fear, but he fails to account for evidence suggesting he threatened the store employee with a firearm. *See Olivas v. State*, 203 S.W.3d 341, 346 (Tex. Crim. App. 2006) ("By defining robbery to be theft plus *either* threatening *or* placing another in fear, [the robbery]

---

[1]    Verdine objected to the 9-1-1 audiotape's admission, arguing that it violated his rights under the Confrontation Clause of the Sixth Amendment. We overrule this challenge later in the opinion.

statute demonstrates that the term 'threaten' means something other than placing a person 'in fear of imminent bodily injury or death.'"); *Vaughn v. State*, 634 S.W.2d 310, 312 (Tex. Crim. App. 1982).

The term "threaten" has been interpreted by the Texas Court of Criminal Appeals to include, among other things, (1) declaring an intention to hurt or punish someone, (2) making a menacing indication of something dangerous or evil, (3) expressing intent to inflict injury or retaliation, and (4) being a source of danger or harm. *Olivas*, 203 S.W.3d at 345. A threat does not have to be voiced; it can be communicated by the robber's actions or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). "So long as the defendant's actions are of such nature as in reason and common experience is likely to induce a person to part with his property against his will, any actual *or* perceived threat of imminent bodily injury will satisfy this element of the offense." *Howard v. State*, 333 S.W.3d 137, 138 (Tex. Crim. App. 2011) (internal quotation marks omitted).

The act of reaching over a counter and taking money from a cash register has been held to qualify as a threat to satisfy this element of the aggravated robbery statute. *Boston v. State*, 410 S.W.3d 321, 327 (Tex. Crim. App. 2013). Relevant here, so is the act of pointing a gun at an individual during a theft. *See Boston v. State*, 373 S.W.3d 832, 840 (Tex. App.—Austin 2012) ("We conclude that the act of brandishing a gun, when done during the course of committing theft, supports a

conviction for aggravated robbery by threat, even when the victim is not aware of the gun"), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *cf. Fagan v. State*, 362 S.W.3d 796, 799 (Tex. App.—Texarkana 2012, pet. denied) (pointing loaded gun at individual is threatening conduct to support conviction for aggravated assault).

The store surveillance video was admitted into evidence and played for the jury.[2] The recording is only a few seconds long. It shows a woman at the entrance of the store followed closely by a man holding a gun to the woman's back. After a couple steps, the man nudges the woman, and she begins to walk with more urgency. The two leave the screen quickly. The recording does not show anyone taking money or property. The recording shows only the entry into the store, the pointing of a gun, and the nudge and faster movement in response.

Sergeant Malveaux testified about the recording. He stated that the woman in the video is the store employee, who he recognized from having interviewed her post-robbery. Malveaux testified that the man in the video is Verdine, who he recognized from his police-investigation interview. According to Malveaux, Verdine looked the same in the video as he did in the interview. Malveaux specifically noted that the man in the video was wearing "the same boots" that Verdine wore when Malveaux interviewed him.

---

[2]     Verdine objected to the recording's admission, arguing that it had not been properly authenticated. We overrule this challenge later in the opinion.

Officer Fernandez and Sergeant Malveaux both testified the store was robbed on February 16, 2017. That date matches the date displayed on the bottom portion of the recording, as played for the jury.

Thus, the jury received video and testimonial evidence that Verdine robbed the store on February 16 and that he pointed a gun at the store employee while doing so. We conclude there was legally sufficient evidence Verdine threatened the store employee by pointing a gun at her while committing theft. *See Boston*, 373 S.W.3d at 840.

We overrule Verdine's second issue.

## Confrontation Clause

In Verdine's first issue, he argues his Sixth Amendment right to confront his accuser was violated when the trial court admitted a recording of the store employee's 9-1-1 call without the store employee present at trial to testify as a witness.

## A.    Standard of review and applicable law

A trial court's ruling to exclude or admit evidence generally is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We defer to a trial court's determination of historical facts and credibility, but we review de novo a ruling on the admissibility of evidence over a Confrontation

9

Clause objection. *Wall v. State*, 184 S.W.3d 730, 742, 743 n.48 (Tex. Crim. App. 2006) (noting that appellate courts review trial court rulings on admissibility of hearsay evidence under abuse-of-discretion standard but review Confrontation Clause objections to admission of evidence under de novo standard).

The Confrontation Clause bars admission of a witness's testimonial statements when the witness does not appear at trial unless the witness is unavailable to testify and the defendant has had a prior opportunity for cross-examination. *See Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)); *see* U.S. CONST. amend. VI. The purpose is to afford the defendant "the opportunity of cross-examination because that is the principal means by which the believability of a witness and the truth of his testimony are tested." *Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (internal quotation marks omitted).

When a defendant raises a Confrontation Clause objection, the burden is on the State to establish that the evidence does not contain testimonial hearsay statements or that it does but such statements are nevertheless admissible. *De La Paz v. State*, 273 S.W.3d 671, 681 (Tex. Crim. App. 2008). The State argued and the trial court found that the store employee's statements on the 9-1-1 recording were nontestimonial. Whether they were is a question of law we review de novo. *Wall*, 184 S.W.3d at 742.

Our review focuses on the primary basis for the statement. *Davis*, 547 U.S. at 822. Statements are nontestimonial when made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* They are testimonial when "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Further, it is "the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Id.* at 822 n.1.

The *Davis* Court analyzed whether admission of a 9-1-1 recording violated the accused's Sixth Amendment rights. 547 U.S. at 817. In that case, a woman, McCottry, called 9-1-1 and was disconnected. The operator called her back. *Id.* McCottry told the operator, "He's here jumpin' on me again." *Id.* She was referring to her former boyfriend, against whom she had a restraining order, who was at her home assaulting her. *Id.* The operator asked if he had any weapons, and McCottry said no. *Id.* McCottry told the operator he was hitting her with his fists. *Id.* The operator asked her to identify the man, and McCottry said his name aloud: Adrian Davis. *Id.* 818. McCottry then told the operator, "He's runnin' now." *Id.* Having been identified to the 9-1-1 operator, and by extension the police, by name,

Davis fled. McCottry's tone during the 9-1-1 call is described in the Supreme Court's opinion as "frantic." *Id.* at 827.

The conversation with the 9-1-1 operator continued after Davis fled. The operator asked McCottry some identification-based questions, including Davis's birthday. *Id.* at 818. The operator asked what Davis had said was the reason he came to McCottry's house. *Id.* After these questions, the operator told McCottry the police were going to "check the area for him first" but then would "come talk to" her. *Id.* The police arrived four minutes later and found McCottry in a "shaken state" with "fresh injuries." *Id.* She was making "frantic efforts" to gather her belongings so that she and her children "could leave the residence." *Id.*

The *Davis* Court held that McCottry's statements made in the 9-1-1 call were nontestimonial because she was speaking about events "as they were actually happening, rather than describing past events." *Id.* at 827 (internal quotation marks and brackets omitted). She was "facing an ongoing emergency" during the call, which was "plainly a call for help against bona fide physical threat." *Id.* Objectively, the nature of what was asked and answered was "to be able to resolve the present emergency rather than simply to learn . . . what had happened in the past," even to the extent the operator sought "to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." *Id.* Lastly, the Court noted, McCottry was "frantic"

in answering the operator's questions in an environment "that was not tranquil, or even (as far as any reasonable 911 operator could make out) safe." *Id.*

The Texas Court of Criminal Appeals, relying on *Davis*, has employed a five-factor test to determine whether statements are considered made during an ongoing emergency and, thus, nontestimonial. *Vinson v. State*, 252 S.W.3d 336, 339 (Tex. Crim. App. 2008); *see Gutierrez v. State*, 516 S.W.3d 593, 597 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The factors include: (1) whether the situation was still in progress, (2) whether the questions sought to determine what was presently happening as opposed to what has happened in the past, (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime, (4) whether the questioning was conducted in a separate room, away from the alleged attacker, and (5) whether the events were deliberately recounted in a step-by-step fashion. *Vinson*, 252 S.W.3d at 339; *Gutierrez*, 516 S.W.3d at 597.

## B.     The challenged statements in the 9-1-1 recording

The jury received evidence that the 9-1-1 call was made by the store employee a few minutes after the robbery. In the recording of the call, the store employee describes key aspects of the robbery that had just occurred. Her voice remains stable and soft throughout the call. The entirety of the conversation, except for the inaudible portions, as noted, is transcribed below:

13

Operator:    Houston 9-1-1. Do you need medical, police, or fire?
Caller:      Police

Operator:    What is the address?
Caller:      Ah. Hold on [inaudible] Ah. 13137 Willow Chase Dr.

Operator:    Is this a house, apartment, or business?
Caller:      Business

Operator:    What is the name of the business?
Caller:      Zone D'Erotica

Operator:    What is your telephone number?
Caller:      Ah [inaudible] I don't know the number here.

Operator:    OK. What is your name?
Caller:      Tiffany

Operator:    What are you reporting?
Caller:      A robbery

Operator:    Like, what happened?
Caller:      Like, a guy came in with a gun and took all the money out of the drawer and left.

Operator:    How long ago did this happen?
Caller:      Ah. Five minutes

Operator:    Handgun or a rifle?
Caller:      Handgun

Operator:    And it was just one person?
Caller:      Yes

Operator:    How many victims were there?
Caller:      I was the only person here.

Operator:    Was he white, black, Hispanic, or Asian?
Caller:      Black

| | |
|---|---|
| Operator: | How old did he appear to be? |
| Caller: | Probably later 30s or early 40s. He was bald. |
| | |
| Operator: | What color shirt was he wearing? |
| Caller: | [inaudible] Black |
| | |
| Operator: | And what color bottoms? |
| Caller: | I don't remember [inaudible] so I'm not sure |
| | |
| Operator: | Was he on foot? |
| Caller: | Yep. And when he left, he ran toward the apartments back behind here. |
| | |
| Operator: | Hold on. OK. Police should be dispatched to 13137 Willow Chase Dr. Is that correct? |
| Caller: | Yes ma'am. |
| | |
| Operator: | Thank you. |
| Caller: | Thank you. |
| | |
| Operator: | Bye-bye. |

## C.    Statements were testimonial

Statements are testimonial and implicate the Confrontation Clause when the circumstances objectively indicate no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events that are potentially relevant to later criminal prosecution. *Davis*, 547 U.S. at 822.

In the store employee's 9-1-1 call, the entire exchange dealt with past events. The caller told the operator the store had been robbed minutes earlier and the robber was gone. There is no indication of ongoing criminal activity or fear that

additional criminal activity might occur; the caller confirmed the robber fled minutes earlier. *Cf. Dixon v.* State, 244 S.W.3d 472, 484–85 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (in determining that 9-1-1 call amounted to nontestimonial "cry for help," noting that "highly distraught" caller stated her boyfriend had recently assaulted her in the car, she was in her home, he was not there, but her front door "doesn't lock very good," which presented danger if he were to return).

Nothing was mentioned by the caller or to the caller about an ongoing emergency or the need for aid to meet an ongoing emergency. *Cf. id.* (in determining that 9-1-1 call amounted to nontestimonial "cry for help," noting that "hysterical" caller initially stated she did not need medical attention but later added that her finger might be broken). Instead, the focus of the call was the store employee providing descriptive information about the robber for the police's use.

In sum, all statements made by the store employee to the 9-1-1 operator related to establishing past events and describing the person whom the police would be looking for near the apartments. Moreover, the caller recited the requested identifying information in an orderly progression without varying topics, making frantic outbursts, or expressing emotion, alarm, or concern. *Cf. id.*

The information conveyed to the 9-1-1 operator would potentially be relevant to the criminal investigation and the later criminal prosecution; the

16

statements were not focused on obtaining assistance for an ongoing emergency. *See Gutierrez*, 516 S.W.3d at 598 (concluding 9-1-1 call was testimonial after noting call was "focused on what had occurred in the past without any expressed concern or discussion of an ongoing emergency," the caller did not indicate any concern that the person who had assaulted her would return, and the caller "declined medical attention" both on the call and when police arrived).

Applying a de novo review, we conclude the store employee's statements on the 9-1-1 recording were testimonial in nature. Although the prosecutor had anticipated the store employee would appear at trial to testify about the robbery, she did not. Thus, the admission of the store employee's testimonial statements without affording Verdine the ability to cross-examine her violated Verdine's rights under the Confrontation Clause.

## D. Harm analysis

### 1. Standard of review

We review constitutional error in the admission of testimonial statements in violation of the Confrontation Clause under the standard specified in Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007); *see* TEX. R. APP. P. 44.2(a). Constitutional error requires reversal of the judgment "unless the court determines beyond a reasonable doubt

that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

The following factors are relevant to our analysis: 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the State's case. *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007).

The emphasis of the harm analysis under Rule 44.2(a) is not on the propriety of the outcome of the trial. *Id.* In other words, the question is not whether the jury's verdict was supported by evidence. *Id.* Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at its verdict. That is, whether the error adversely affected the integrity of the process that led to the conviction. *Id.*

In analyzing harm, we may consider, in addition to the factors listed above, and without limitation, the source and nature of the error, the extent, if any, the error was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of evidence with respect to an element or defensive issue to which the evidence is relevant. *Id.*

We must ask whether there is a reasonable possibility that the error moved the jury from a state of non-persuasion to one of persuasion on a particular issue. *Id.* Ultimately, we must be satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction to conclude that the error was harmless and affirm. *Id.*

## 2. Error was harmless

Verdine argues the error in admitting the 9-1-1 recording was harmful because the store employee was not at trial to testify about the robbery or to identify Verdine as the person who robbed the store. Although he characterizes the 9-1-1 recording as "not cumulative of other evidence" in his brief, Verdine acknowledges the statements in the recording corroborated other incriminating evidence. In our view, the corroborative nature of the statements made it cumulative.

Officer Fernandez testified he received a dispatch call and, within minutes, encountered Verdine, on foot, only 150 feet from the store. Verdine was sweaty on a February evening, which suggested to Fernandez that Verdine had been running. He found money wadded up in Verdine's pants pocket, though he did not testify how much money was recovered.

Another investigating officer, Sergeant Malveaux, testified he investigated the store robbery. He watched the store's surveillance video. He also interviewed

19

Verdine, who was a suspect. According to Malveaux, the man in the store's surveillance video seen pointing a gun at a woman as he enters the store matched Verdine's appearance during the police interview. Malveaux testified the two had matching physical characteristics, including matching shoes.

The store employee's testimony on the 9-1-1 recording described the robbery and the robber. It was cumulative of the testimony from the two officers and the video evidence. On the 9-1-1 recording, the store employee states the store was robbed, which Sergeant Malveaux testified to. She stated the robber was a black, bald man wearing a black shirt, which is seen on the surveillance video and consistent with Fernandez's testimony about Verdine's appearance when he stopped Verdine shortly after the robbery. Finally, the caller stated the robber fled on foot. Fernandez testified he found Verdine 150 feet from the store in a sweaty state.

Because of its cumulative character, we conclude there is not a reasonable possibility the trial court's admission of the 9-1-1 recording moved the jury from a state of non-persuasion to one of persuasion on the issue of Verdine's guilt or punishment. *See Kou v. State*, 536 S.W.3d 535, 545–49 (Tex. App.—San Antonio 2017, pet. ref'd) (in child-sexual-abuse case, concluding that erroneous admission of lab results showing child had herpes infection was harmless given that jury also

20

received testimony from nurse examiner about her observation of lesions on child that looked like herpes infection); *see also* TEX. R. APP. P. 44.2(a).

Moreover, this is not the type of 9-1-1 call that raises concern over the possibility emotional, perhaps distraught, pleas for help will inflame the jury and lead it to reach a verdict detached from the evidence. *See Sierra v. State*, 157 S.W.3d 52, 63 (Tex. App.—Fort Worth 2004) (concluding that, while voices on 9-1-1 recording were "excited and distraught," they "did not display such emotion as to inflame the jurors to act on emotion rather than on the evidence"), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007). The store employee maintained a steady voice throughout the call. There was no indication of fear or distress. All her statements were factual responses to specific questions about what had occurred, where, and by whom. The character of the call presents no concern that the error in admitting the call moved the jury from a position of non-persuasion to one of persuasion on the issue of Verdine's guilt or punishment. *See* TEX. R. APP. P. 44.2(a).

Finally, we reject Verdine's argument that the weakness of the State's case requires a holding of harmful error. Verdine objected to the 9-1-1 recording and the surveillance video recording. He argues on appeal the trial court erred in admitting both. His harm analysis in analyzing the admission of the 9-1-1 recording hinges on the surveillance video recording being held inadmissible too. But we have already concluded the surveillance video recording was properly

21

admitted. Viewing the 9-1-1 call in light of surveillance video recording, we cannot agree with Verdine that the call affected the jury's determination of guilt or punishment.

Because we have determined beyond a reasonable doubt the trial court's error in admitting the 9-1-1 recording did not contributed to Verdine's conviction or punishment, we conclude the error in admitting the recording was harmless beyond a reasonable doubt.

We overrule Verdine's first issue.

**Surveillance Video Evidence**

In his third issue, Verdine argues the trial court abused its discretion in admitting the surveillance video recording discussed above because it was inadequately authenticated by the State's witnesses.

**A.    Standard of review and applicable law**

The standard for reviewing a trial court's evidentiary rulings is abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The deferential standard requires that we uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). A trial court judge is given considerable latitude on evidentiary rulings. *Id.* That different trial judges might reach different conclusions on similar facts does not equate to an abuse of

discretion. *Id.* So long as the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least within the zone of reasonable disagreement," we do not interfere. *Id.*

Rule of Evidence 901 provides that, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must "produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a).

The proponent of surveillance video is not limited to proving the video recording's authenticity through testimony of someone who witnessed what the recording depicts or someone familiar with the functioning of the recording device. *Fowler*, 544 S.W.3d at 848. Surveillance video evidence can be authenticated with evidence of distinctive characteristics, including the "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken together with all the circumstances." TEX. R. EVID. 901(b)(4); *see Fowler*, 544 S.W.3d at 848. Authenticity is not required to be established conclusively. *Fowler*, 544 S.W.3d at 848. Instead, "Rule 901 merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims." *Id.* at 849 (internal quotation marks omitted).

Video recordings without audio are treated as photographs and are authenticated by establishing that the images accurately represent the scene in question and are relevant to a disputed issue. *Id.*

**B.    The trial court did not err in admitting the surveillance video recording**

In arguing the video was not adequately authenticated, Verdine attempts to distinguish the facts surrounding the Zone D'Erotica's surveillance video from the video at issue in *Fowler*. 544 S.W.3d at 848. In *Fowler*, the surveillance video was authenticated by an investigating officer without any testimony from the person who downloaded the images or the person who was responsible for maintaining the surveillance equipment. 544 S.W.3d at 848. In holding the video had been adequately authenticated, the Court of Criminal Appeals acknowledged the prosecutor could have produced more evidence in support of authentication with testimony from the person who downloaded the images or the person who was responsible for maintaining the surveillance equipment. *Id.* at 850. But that testimony was not mandatory because the State was not required to conclusively prove that the video was what it purported to be; instead, Rule 901 "merely requires some evidence sufficient to support a finding that evidence in question is what the proponent claims." *Id.* at 848 (quoting *Reed v. State*, 811 S.W.2d 582, 587 (Tex. Crim. App. 1991). The investigating officer's testimony sufficed. *Id.* at 848.

The *Fowler* Court concluded the following circumstantial evidence supplied sufficient facts to support the trial court's ruling that a reasonable jury could have found the evidence authentic:

- the officer made an in-person request of the store manager to pull the surveillance video on a certain date at a certain time;

- the videotape displayed a date and time stamp;

- the date and time matched the relevant time of the offense; and

- the videotape contained an image of the defendant at the time and date specified.

*Id.* at 849–50.

Here, Sergeant Malveaux testified he investigated the robbery that occurred on February 16, 2017. That same day, he requested the store's surveillance video. Malveaux watched the manager download the video onto a flash drive. Malveaux testified that, during his investigation, he met the store employee who was working at the time of the robbery. He also met Verdine. He testified he has watched the surveillance video recording and, in his view, both Verdine and the store employee are shown in the video, along with the date of the robbery. We conclude the trial court's determination that Sergeant Malveaux supplied facts sufficient to support a reasonable jury determination that the videotape was authentic was a decision within the zone of reasonable disagreement. *Id.*

Verdine argues for the first time on appeal that there is another layer of authentication error with regard to the surveillance video: that it appears to be a video taken of a television or computer screen playing the surveillance video. In other words, the trial exhibit is a video of the challenged video. First, videos without sound are analyzed as photographs, and the rules of evidence permit duplicate impressions to be admitted the same as the original unless admission of the duplicate would be unfair or there is an issue of authenticity as to the original. *See Fowler*, 544 S.W.3d at 849; *see also* TEX. R. EVID. 1001(c) ("photograph" means "photographic image or its equivalent stored in any form"), (d) ("original" photograph includes "the negative or a print from it"); 1003 (providing that a "duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate"). Second, we have already concluded the original video recording obtained by Sergeant Malveaux from the store manager did not raise authenticity concerns beyond the zone of reasonable disagreement. Third, Verdine does not argue any basis from which to conclude the creation of a copy video raised an issue of alteration or taint of the original video, only that it appears to be such a copy.

Concluding the trial court's ruling to admit the surveillance video recording was within the zone of reasonable disagreement and not an abuse of discretion, we hold the trial court did not err in admitting the videotape.

26

We overrule Verdine's third issue.

## Denial of Motion for Mistrial

In his fourth and fifth issues, Verdine argues the trial court abused its discretion in denying his two motions for mistrial.

### A.    Standard of review and applicable law

A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We review the denial of a mistrial for an abuse of discretion. *Id.* We must uphold the ruling if it was within the zone of reasonable disagreement. *Id.* In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (including its prejudicial effect); (2) the effectiveness of the curative measures taken; and (3) the certainty of the conviction or punishment assessed absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

### B.    First motion for mistrial

The events surrounding the first denied motion for mistrial occurred in the following order. The surveillance video recording was admitted into evidence. The recording was played while J. Gonzalez, a District Attorney's Office Investigator, testified. When the video finished, the prosecutor asked Gonzalez who he saw in

the video. Gonzalez answered with the name of the store employee, who he had previously met and interviewed. Next, the prosecutor asked Gonzalez to "describe for the jury how she appears" in the recording. He answered, "Rather scared." Verdine objected that the question called for speculation. The objection was sustained. Verdine requested an instruction to the jury to disregard the statement. The trial court instructed the jury to disregard it. Verdine moved for a mistrial. The trial court denied his motion.

"Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer . . . ." *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Prejudice is incurable only when the objectionable material is clearly calculated to inflame the jury or is of such a damaging character as to suggest it would be impossible to remove the harmful impression from the jurors' minds. *See Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009).

We conclude the objectionable question and answer were not so prejudicial as to be incurable with an instruction to disregard or to overcome the presumption the jury followed the trial court's instruction to disregard. The question was a small part of the evidence. And, while Verdine's earlier issue challenging the denied directed verdict focused on whether the store employee was fearful, as we have noted, her "fear" was not a necessary element to convict on the offense of robbery: a "threat" was a permissible alternative. Thus, the jury's verdict did not turn on

being adequately persuaded the store employee looked scared. Finally, the video recording was in evidence, and the jurors were free to evaluate it to form their own impression regarding how the store employee "appeared," independent of the investigator's interpretation. *See Maryland Cas. Co. v. Hearks*, 190 S.W.2d 62, 64 (Tex. 1945) (jurors make their own determination of evidence).

We conclude Investigator Gonzalez's statement was not so prejudicial that it suggests the jury could not withdraw the impression produced by the remark or would not adhere to the trial court's instruction to disregard it. Accordingly, we hold the trial court did not abuse its discretion in denying appellant's first motion for mistrial.

## C. Second motion for mistrial

Verdine moved again for a mistrial after the State began its closing arguments. The prosecutor's closing began as follows:

> There is no evidence of fear in this case? Did we not see State's Exhibit No. 6 [the surveillance video]? Do we not see the video of this defendant pointing a gun at [the store employee]? You can tell from the video that she was outside smoking a cigarette and she's ushered back in with a shotgun[3] to her back. Do we not have any evidence of fear when [the employee] walks into this courtroom, sees this defendant, and walks right back out because she's too afraid to tell you—

---

[3] The gun in the video is a handgun, as Investigator Gonzalez stated in his testimony. Verdine does not argue error or harm in the misstatement of the type of weapon seen in the video.

At that point, Verdine interrupted to lodge an objection that the argument went outside the record. The trial court sustained the objection. Verdine requested the jury be instructed to disregard the statement. The trial court instructed the jury to do so. Verdine moved for a mistrial. The trial court denied the motion. Immediately after, the prosecutor continued by stating the following:

> Officer Gonzalez told you that [the store employee] appeared in court and she walked out. And you and I can infer as to why that could be. We know for a fact that Officer Fernandez came here and he testified that he brought the defendant back. He brought the defendant back to the scene and he had [the employee] look at him. The defendant is staring right at her. He is in the back of his patrol car. The robbery had just occurred and she's too afraid to pick him out. There is your fear, ladies and gentlemen. I told you in voir dire that beyond a reasonable doubt is your gut feeling. It is a common-sense standard. And the Judge said it and I'm going to say it again: You do not leave your common sense at the door. Common sense tells you that when a person has a gun pointed at them, when they are demanded all the cash in the safe, in the cash register—and all that is present on that 9-1-1 call—fear is present.

Verdine did not object to the second statement, which was a restatement of the first objected-to statement. Failure to object to jury argument at trial forfeits the right to raise the issue on appeal. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); TEX. R. APP. P. 33.1(a). If impermissible argument is pursued after an initial objection, counsel must lodge a new objection "each and every time the objectionable argument is made" to preserve error. *Briones v. State*, 12 S.W.3d 126, 129 (Tex. App.—Fort Worth 1999, no pet.) (citing *Ethington*, 819 S.W.2d at 858); *Johnson v. State*, 416 S.W.3d 602, 617 (Tex. App.—Houston [14th Dist.]

30

2013, no pet.) ("When appellant allowed the State to make the complained of argument on three separate occasions in front of the jury without objection—twice before objecting and again after objecting—appellant failed to preserve error for review.").

We overrule Verdine's fourth and fifth issues.

## Conclusion

We affirm.


Sarah Beth Landau
Justice

Panel consists of Justices Radack, Landau, and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).