**Opinion issued January 9, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-22-00361-CR

———————————

### GARY WAYNE WILSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1068173**

---

## MEMORANDUM OPINION

A jury found appellant, Gary Wayne Wilson, guilty of the felony offense of

aggravated sexual assault of a child[1] and assessed his punishment at confinement for

---

[1]      *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B), (a)(2)(B), (e).

forty years and a fine of $10,000. In two issues, appellant contends that the trial court erred in admitting certain evidence.

We modify the trial court's judgment and affirm as modified.

**Background**

This is not our first appeal involving appellant.[2] In August 2006, a Harris County Grand Jury returned a true bill of indictment alleging that appellant, on or about October 1, 2005, "unlawfully, intentionally and knowingly cause[d] the anus of [K.M., the complainant], a person younger than fourteen years of age and not the spouse of [appellant], to contact the sexual organ of [appellant]." (Emphasis omitted.)

At trial in December 2012, both the complainant and B.M., the complainant's sister, testified about appellant's behavior and the sexual assaults committed by appellant.[3] A jury found appellant guilty of the felony offense of aggravated sexual assault of a child and assessed his punishment at confinement for life.[4] Appellant

---

[2] *See Wilson v. State*, 451 S.W.3d 880 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd).

[3] *Id.* at 883–84 (explaining complainant "testified at length and in detail about the sexual assaults to which . . . [a]ppellant subject[ed] him" and "that [a]ppellant sexually assaulted him two to five times every month" for years; complainant's sister testified that "she once saw [a]ppellant sexually assaulting [complainant] by penetrating [his] anus with [a]ppellant's penis" and that "[a]ppellant would regularly walk around the house naked, would have sex with [complainant's] mother in front of the children, and would leave pornographic magazines lying around the house").

[4] *Id.* at 883.

2

appealed, asserting that the trial court erred in excluding certain evidence "of his good character for moral and safe conduct around young children" during the guilt phase of trial.[5] We agreed, reversed the judgment of the trial court, and remanded the case for a new trial.[6]

Following remand, a new trial commenced. Before the admission of any evidence, the trial court held a hearing, outside the presence of the jury, to determine whether to admit into evidence the testimony of the complainant and the complainant's sister from appellant's first trial because they were now "unavailable."[7] During the hearing, the trial court admitted into evidence several stipulations of evidence. In the first stipulation of evidence, appellant stipulated:

> If [the complainant] were to appear before the presiding judge of the 209th District Court, he would testify that he refuses to testify in The State of Texas v. Gary Wayne Wilson, [c]ause number 1068173, or any related matters. [And] even after [the] . . . presiding judge of the 209th District Court[] would order [the complainant] to testify, he would still state that he refuses to testify.

> Additionally, . . . if asked about whether he could testify at a later date, [the complainant] would respond that he will refuse to testify at the trial scheduled for April 28[], 2022 and would refuse to testify at a future trial date as well.

In the second stipulation of evidence, appellant stipulated:

---

[5]     *See id.*

[6]     *See id.* at 883–89.

[7]     *See* TEX. R. EVID. 804(a), (b)(1)(B) ("Exceptions to the Rule Against Hearsay—When the Declarant is Unavailable as a Witness").

If [the complainant's sister] were to appear before the presiding judge of the 209th District Court, she would testify that she refuses to testify in The State of Texas v. Gary Wayne Wilson, [c]ause number 1068173, or any related matters. [And] even after [the] . . . presiding judge of the 209th District Court[] would order [the complainant's sister] to testify, she would still state that she refuses to testify.

Additionally, . . . if asked about whether she could testify at a later date, [the complainant's sister] would respond that she will refuse to testify at the trial scheduled for April 28[], 2022 and would refuse to testify at a future trial date as well.

In the third stipulation of evidence, appellant stipulated:

I am the same Gary Wayne Wilson who was the defendant in the trial for the offense of Aggravated Sexual Assault of a Child in cause number 1068173 in the 209th District Court of Harris County, Texas in December 2012. I am the same Gary Wayne Wilson who was identified on the record by [the complainant] on or about December 6, 2012 and by [the complainant's sister] on or about December 7, 2012.

Additionally, at the hearing, the complainant's father testified that he was the father of the complainant and of the complainant's sister, and both the complainant and the complainant's sister testified at the first trial. The complainant's father recounted that after the complainant's sister testified in the first trial, she was a "wreck" and "scared."

According to the complainant's father, when the complainant's sister learned that there would be a retrial in appellant's case, she called him crying and was "very upset." The complainant's sister "froze up on the phone" and "couldn't talk." The complainant's sister told the complainant's father that she would "rather be dead" than see appellant again. The complainant's father believed her. Although he tried

4

to talk to her several times about testifying at appellant's retrial, the complainant's sister did not change her mind, and he did not think that she would ever change her mind. The complainant's sister knew that the trial court had ordered her to testify, and she could be held in contempt, but she still refused to testify at appellant's retrial. It was the complainant's father's opinion that testifying at appellant's retrial would be detrimental to the complainant's sister's health.

The complainant's father also noted that the complainant's sister had never recanted her testimony from the first trial or said that the events she testified to "didn't happen."

Paul Fortenberry, a Harris County assistant district attorney, testified that he was one of the lead prosecutors in appellant's first trial in December 2012. The complainant's sister was apprehensive about "talking about what had happened" and about testifying at the first trial. In a meeting with the complainant's sister before the first trial, the complainant's sister crawled under a conference table to avoid making eye contact and talking about what had happened to her and to the complainant. Eventually, the complainant's sister opened up about what had happened to her and what she had witnessed happening to the complainant. Before appellant's first trial, Fortenberry told the complainant's sister about the importance of telling the truth while testifying.

5

As to the first trial, Fortenberry explained that there was no way to know why appellant's then-counsel chose to not cross-examine the complainant during the guilt phase of trial, but counsel was given the opportunity to do so. According to Fortenberry, during appellant's first trial, the complainant was "made available" for cross-examination by appellant's then-counsel.

As to appellant's retrial, Fortenberry testified that the complainant's sister told him that she was refusing to testify at the retrial. Fortenberry noted that the complainant's sister had never recanted her previous testimony or said that the "events did not happen to her or she did not witness what happened to [the complainant]."

Norma Juenke, a paralegal with the Harris County District Attorney's Office, testified that she assisted the prosecutors in appellant's first trial. Juenke noted that it was difficult in 2012 for the complainant to talk about what had happened to him, and it took months of meetings with him before the complainant disclosed any details. The complainant identified appellant as "the person that did . . . things to him." When the complainant testified at the first trial, he appeared very sad and kept his head down. Testifying was "difficult for him." The complainant swore to tell the truth before he testified at the first trial. During the first trial, appellant's then-counsel was given an opportunity to ask the complainant questions on

cross-examination, but appellant's counsel did not ask the complainant any questions.

Juenke further testified that she had kept in contact with the complainant since appellant's first trial and spoke to him "[e]very three to four days." After the first trial, the complainant was not okay. He appeared to be suffering from a trauma.

As to appellant's retrial, Juenke explained that she reached out to the complainant about testifying at the retrial, but he refused to do so. He was very upset and angry about the idea. After the complainant was served with a subpoena to testify at appellant's retrial, he began having nightmares and shut down. Although the complainant agreed to meet with Juenke and others about the retrial, at the meeting, the complainant said he would not come to court and testify. Also, during the meeting, the complainant froze and "stared into space" for about fifteen minutes when shown a diagram of the home where the sexual assaults had occurred. According to Juenke, the complainant refused to testify at the retrial because he did not what to "relive any trauma."[8]

At the conclusion of the hearing, the State argued that the trial court should admit into evidence the testimony of the complainant and the complainant's sister from the first trial because the complainant and the complainant's sister were

---

[8]     Additional witnesses testified at the unavailability hearing and additional exhibits were admitted into evidence.

unavailable to testify at the retrial and they were subject to cross-examination at the first trial. Thus, under Texas Rule of Evidence 804, the testimony of the complainant and the complainant's sister from the first trial was admissible at appellant's retrial.

In response, appellant asserted that the admission of the former testimony of the complainant and the complainant's sister at the retrial constituted a violation of appellant's "Sixth Amendment right to cross-examination and confrontation." Appellant also asserted that "it was a different trial, different set of circumstances," and "[t]here was no cross-examination" of the complainant at the first trial. Thus, appellant requested that the trial court exclude the former testimony of the complainant and the complainant's sister from the retrial.

The trial court concluded that the complainant and the complainant's sister were unavailable to testify at appellant's retrial and appellant had the opportunity and similar motive to cross-examine the complainant and the complainant's sister at the first trial. Thus, the trial court ruled that the former testimony of the complainant and the complainant's sister was admissible at the retrial.

The trial court made findings of fact and conclusions of law, which included the following conclusions:

- The State . . . has demonstrated that the witnesses are unavailable as a matter of law. Both [the complainant] and [the complainant's sister] are ruled unavailable as . . . witnesses as they have "refused to testify about the subject matter despite a court order to do so and cannot be present or testify at the trial or

8

hearing because of . . . []then existing infirmity, physical illness, or mental illness" as defined by Texas Rule of Evidence 804.

- The second prong of [Texas Rule of Evidence] 804(b) requires that the defendant had an opportunity and similar motive to develop the testimony . . . . There is nothing presented to this Court that would suggest or lead to the conclusion the opportunity did not exist nor that the motive to develop the testimony was not the same in the first trial as it is for the . . . [re]trial.

- This Court finds the State has demonstrated and proved that the witnesses [are] unavailable as defined by the Texas Rules of Evidence and that the testimony offered by the State, was given as a witness at a trial, and is now offered against a party who had an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

(Emphasis omitted.)

During the guilt phase of appellant's retrial, the complainant's testimony from the first trial was read into evidence during the State's case in chief.[9] In his former testimony, the complainant testified that he was fifteen years old and his sister was seventeen years old. The complainant stated that he knew the difference between a truth and a lie.

The complainant further testified that after his parents separated when he was younger, the complainant lived in a house in Harris County, Texas with his mother,

---

[9] *See Kennedy v. State*, No. 12-11-00041-CR, 2012 WL 3201924, at *5 (Tex. App.—Tyler Aug. 8, 2012, pet. ref'd) (mem. op., not designated for publication) ("Reading the prior testimony into the record is an appropriate method of introducing prior testimony.").

9

his two brothers, and his sister. At some point, when the complainant was in kindergarten or first grade, the complainant's mother started dating appellant.

According to the complainant, after appellant moved into the complainant's home, appellant and the complainant's mother shared a room, the complainant shared a room with his younger brother, and the complainant's sister and the complainant's older brother each had their own rooms. The complainant's mother started heavily drinking alcohol after appellant moved into the home.

At first, appellant was nice to the complainant, but that changed. After appellant moved into the complainant's home, appellant started hitting the complainant in his chest, stomach, and face. The complainant believed he was around seven years old when the hitting began. Appellant would slap him with an open hand and punch him with a closed fist. Appellant would also hit the complainant with the metal part of a leather belt and with a paddle. Appellant would hit him for no reason. Appellant left marks on the complainant's body. The complainant tried to cover up the marks with long sleeved shirts because he was embarrassed. The complainant did not tell anyone about the physical assaults because appellant told the complainant that he would kill the complainant's father if he told, and the complainant believed appellant.[10]

_____

[10] The complainant recalled one specific time when appellant physically assaulted him. The complaint was home alone with appellant and in the living room when appellant walked in and told him to "come here." The complainant got up and

10

The complainant further testified that appellant also sexually assaulted him multiple times.[11] The first time that appellant sexually assaulted the complainant was after school when the complainant was at home alone with appellant. According to the complainant, he was in his bedroom playing a video game and appellant came into the room mad. Appellant grabbed the complainant by the shirt and tried to lift him up. The complainant's shirt ripped. Appellant then picked the complainant up by the arms and laid him on the bottom bunk of the bunkbed in the room. The complainant struggled to get away from appellant. Appellant pulled off the complainant's shorts and underwear. Appellant took off his jeans and his underwear and pulled the complainant toward him. Appellant stuck his penis in the complainant's anus. It was painful, and the complainant cried. When appellant's cellular telephone rang, he stopped and answered the phone. Appellant put on his clothes and left the bedroom. The complainant stayed in his room until his mother,

---

walked with appellant to the complainant's sister's bedroom. Appellant picked the complainant up and put him on the top bunk of the bunk bed. Appellant then grabbed a metal clothes hanger and pulled the complainant off the top bunk. The complainant hit the side of the door on the way down, and appellant started hitting the complainant with the metal clothes hanger. He hit the complainant on the arm, chest, and hand. Appellant grabbed the complainant's shirt to pull him up, and then he started punching the complainant in the chest. Appellant next pulled off his belt and started hitting the complainant with the belt. Appellant was mad, and the complainant believed he was being punished. When appellant stopped, he left the room.

[11] The complainant testified that appellant sexually assaulted him while he was in elementary school, and he believed he was about seven years old when it occurred.

11

sister, and brother came home. The complainant hid his ripped shirt so that no one would see it. The complainant did not tell anyone about what had happened because he "didn't know how to explain it" and "didn't know the purpose of any of it."

Another time, the complainant was taking a shower before school. Appellant came into the bathroom and pulled the shower curtain back. Appellant was not wearing any clothes. Appellant stepped into the shower with the complainant ,which had never happened before. Appellant grabbed the complainant on the top of his shoulders and pushed him down toward the floor. The complainant slipped and fell to his knees. Appellant then grabbed his penis with his hand and tried to put it in the complainant's mouth. The complainant tried to turn away, but appellant told him to "[o]pen [his] mouth, . . . it's easy." The complainant complied, and appellant put his penis in the complainant's mouth. This continued until appellant heard the complainant's mother wake up. Appellant told the complainant to "hurry up and get out of the shower." The complainant dried off and went to his room to get dressed. The complainant did not tell anyone about what had happened because he "didn't know what to think."

The complainant also testified that appellant had sexually assaulted him in the living room of the home when he and appellant were home alone. The complainant was in the living room playing a video game, and appellant came into the room and turned off the complainant's game. Appellant was wearing a shirt and underwear.

He grabbed the complainant, pushed him back into the couch, and pulled off the complainant's underwear. Appellant then stood behind the complainant and put his penis in the complainant's anus. After appellant was done, the complainant sat on the floor. He was too afraid to leave because he "didn't want anything to happen to [him] again."

Additionally, according to the complainant, on another day, the complainant was in his room putting some clothes on. He put on underwear, shorts, and socks and walked out of his bedroom. Appellant then came out of the bedroom he shared with the complainant's mother, "scooped [the complainant] up," and kind of threw the complainant over his shoulder. Appellant took him into the complainant's older brother's room and put him on the bed. Appellant took off his shorts and took off the complainant's shorts and underwear. Appellant tried to put his penis in the complainant's anus, but the complainant struggled and tried to get away. Eventually, appellant succeeded and put his penis in the complainant's anus. The complainant cried. Appellant stopped when the complainant's mother came out of her bedroom. Appellant told the complainant to put his clothes on, and the complainant went back to his bedroom and lay on his bed crying. When his mother found him, he did not tell her why he was crying because he "couldn't explain about it" and he "didn't know if what happened was right or wrong."

And the complainant testified about another incident, in which appellant physically and sexually assaulted him using duct tape.[12] The complainant was in his bedroom and appellant duct taped the complainant's hands to the bedframe so that the complainant could not "pull them out." Appellant took his shorts off and pulled off the complainant's jeans. Appellant pulled the complainant's body toward him and put his penis in the complainant's anus. The complainant cried and "tr[ied] to figure out when it was going to be over or why it was happening." When appellant stopped, he used a box cutter to remove the duct tape. The tape left red marks on the complainant's arm.

The complainant explained that the specific instances that he described in his testimony were not the only times that appellant sexually assaulted him. Appellant sexually assaulted the complainant at least two to five times a month. The complainant also noted that appellant had sexual intercourse with the complainant's mother in front of the complainant on multiple occasions. And appellant would leave magazines with "naked pictures" around the house and walk around the house naked.

---

[12] The complainant also testified that appellant used duct tape on another occasion when appellant physically assaulted him. Appellant taped the complainant's hands behind his back and taped his legs and ankles. He then kicked and hit the complainant while the complainant was duct-taped. When appellant cut the duct tape off, the complainant had imprints from the tape on his hands.

On rebuttal, the complainant's sister's testimony from guilt phase of the first trial was read into evidence. In her former testimony, the complainant's sister testified that she was in the eleventh grade in high school and the complainant was one of her younger brothers. When she was younger, she lived in a home in Harris County with her brothers and the complainant's mother. Appellant also lived in the home.

As to appellant's behavior in the home, the complainant's sister stated that he had sexual intercourse with the complainant's mother on multiple occasions in front of her and her brothers. Appellant also walked around the house naked "all the time." And there were always pornographic magazines in the bathroom and on the coffee table in the living room of the house.

The complainant's sister also saw appellant physically assault the complainant, which included "spanking, . . . paddling, . . . using a belt," duct taping the complainant, and "beating him." Appellant would hit the complainant with a belt all over his body. And appellant would use duct tape to bind the complainant's wrists and ankles together so that the complainant "couldn't fight back" when appellant "beat him with a belt [or] a paddle." Appellant would then leave the complainant bound. "[O]n one occasion[,] he duct-taped [the complainant,]" "put him in the car[,] and drove off." They "came back hours later."

The complainant's sister also saw appellant sexually assault the complainant. One time, she walked by the complainant's room and his door was cracked open. She saw the complainant naked and "face down on the floor" with appellant "behind him" "on his knees almost." Appellant was not wearing any clothes. The complainant was "flailing and kind of screaming, like get off, and [appellant] was hurting him, and [appellant's] body [was] moving back and forth." The complainant's sister did not tell anyone about what had happened to the complainant because appellant "threatened to kill [her] and [her] dad."

On cross-examination in the first trial, the complainant's sister testified that appellant's children lived in the same house "[o]ff and on," and they slept in the living room.[13]

### Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd); *see also Lee v. State*, 442 S.W.3d 569, 575 (Tex. App.—San Antonio 2014, no pet.) ("We review a trial court's decision on whether to admit former testimony under [Texas Rule of Evidence] 804(b)(1) for an abuse of discretion."). A trial court

---

[13] During the punishment phase of appellant's retrial, the testimony of the complainant and the complainant's sister from the punishment phase of the first trial was admitted into evidence.

abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

When an objection to the admission of evidence is based on the Confrontation Clause of the United States Constitution, we review the trial court's evidentiary ruling de novo. *See Woodall v. State*, 336 S.W.3d 634, 642 (Tex. Crim. App. 2011); *Wall v. State*, 184 S.W.3d 730, 742–43 & n.48 (Tex. Crim. App. 2006) (noting appellate courts review trial court rulings on admissibility of hearsay evidence under abuse-of-discretion standard but review Confrontation Clause objections to admission of evidence under de-novo standard); *Nicholls v. State*, 630 S.W.3d 443, 448 (Tex. App.—Eastland 2021, pet. ref'd).

**Exclusion of Evidence**

In his first and second issues, appellant argues that the trial court erred in admitting the testimony of the complainant from appellant's first trial because appellant did not have "a similar motive to develop the testimony of [the

complainant] by cross-examination during the [first] trial" and appellant was deprived his Sixth Amendment right to cross-examine the complainant.[14]

Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible except as provided by statute or the rules of evidence. TEX. R. EVID. 802. Texas Rule of Evidence 804(b)(1)(B) allows the admission of a witness's testimony from a prior proceeding if that witness is unavailable as a witness in the current trial. *See* TEX. R. EVID. 804(b)(1)(B); *Rhymes v. State*, 536 S.W.3d 85, 101–02 (Tex. App.—Texarkana 2017, pet. ref'd). Specifically, rule 804(b)(1)(B) provides that in a criminal prosecution, former testimony of a witness is admissible if: (1) the witness is unavailable to testify as a witness in the current proceeding; (2) the witness gave the former testimony at a trial or hearing of the same or a different proceeding; and (3) the former testimony "is [being] offered against a party who had an opportunity and similar motive to develop it by direct, cross-, or redirect examination."[15] *See* TEX. R. EVID. 804(b)(1)(B); *see also Sanchez v. State*, 354 S.W.3d 476, 481 n.5 (Tex. Crim. App. 2011). Rule 804(b)(1)(B) does not require the party against whom the former testimony is being offered to have had an "identical" motive to develop the

---

[14] On appeal, appellant does not appear to complain abut the admission of the complainant's sister's former testimony at appellant's retrial.

[15] Appellant does not dispute that the complainant was unavailable.

testimony; instead, it only requires that he have had a "similar" motive. *See Coffin v. State*, 885 S.W.2d 140, 147 (Tex. Crim. App. 1994) (internal quotations and emphasis omitted); *see also Brown v. State*, No. 14-12-00389-CR, 2013 WL 4511349, at *5 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, no pet.) (mem. op., not designated for publication).

Appellant first argues that the trial court erred in admitting into evidence at appellant's retrial the complainant's testimony from appellant's first trial because although the complainant was unavailable, appellant did not have "a similar motive to develop the testimony of [the complainant] by cross-examination during the [first] trial," which is required for the admission of former testimony under rule 804(b)(1)(B). *See* TEX. R. EVID. 804(b)(1)(B).

Here, even if we presumed for purposes of this opinion that the trial court erred in admitting the complainant's testimony from appellant's first trial under Texas Evidence Rule 804(b)(1)(B), we must still perform a harm analysis to determine if the trial court's purported error requires reversal of the trial court's judgment. *See, e.g.*, *Brown*, 2013 WL 4511349, at *7.

If the erroneous admission of evidence constitutes a violation of Texas Rule of Evidence 804(b), it is non-constitutional error. *See Loun v. State*, 273 S.W.3d 406, 420–21 & n.24 (Tex. App.—Texarkana 2008, no pet.); *see also Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Solomon v. State*, 49 S.W.3d 356, 365

(Tex. Crim. App. 2001). Non-constitutional error requires reversal only if it affects the substantial rights of the defendant. *See* TEX. R. APP. P. 44.2(b); *Barshaw v. State*, 342 S.W.3d 91, 93–94 (Tex. Crim. App. 2011). The defendant's substantial rights are affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not overturn a criminal conviction for non-constitutional error if, after examining the record, we have fair assurance that the error did not influence the jury or had but a slight effect. *Barshaw*, 342 S.W.3d at 93–94.

We review the entire record to determine the effect or influence of the wrongfully admitted evidence on the jury's decision. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). In assessing the likelihood that the jury's decision was improperly influenced, we consider the testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Barshaw*, 342 S.W.3d at 94; *Motilla*, 78 S.W.3d at 355–56. The weight of evidence of the defendant's guilt is also relevant in conducting the harm analysis. *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008); *see also Motilla*, 78 S.W.3d at 355–60. And we may consider closing statements and voir dire, jury instructions, the State's theory, any defensive theories, and whether the State emphasized the alleged error. *Motilla*, 78 S.W.3d at 355–56. Notably, error in the

admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere at trial without objection. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998).

Related to his first issue, appellant fails to assert in his briefing that he was harmed by the admission of the complainant's testimony from appellant's first trial. *See Petriciolet v. State*, 442 S.W.3d 643, 653–55 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (even if trial court improperly admitted evidence, appellate court must still determine whether defendant was harmed by erroneous admission); *see, e.g., Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (holding defendant waived complaint on appeal because he inadequately briefed issue by failing to address whether alleged error was harmless); *Chaves v. State*, 630 S.W.3d 541, 557–58 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding defendant waived complaint trial court erred in admitting certain evidence because he "failed to adequately brief his assertion that he was harmed by the admission of" complained-of evidence); *Ford v. State*, No. 01-17-00213-CR, 2018 WL 1473948, at *6 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, no pet.) (mem. op., not designated for publication) (appellate court need not determine whether trial court erred in admitting exhibits where defendant did not argue in briefing that he was harmed by purportedly erroneous admission of exhibits); *Wilson v. State*, 473 S.W.3d 889, 900–01 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) ("Here, we

do not address whether the trial court erred in admitting the complained-of . . . evidence because even were we to conclude that the trial court erred in admitting such evidence, appellant, in his brief, does not argue that he was harmed by its admission.").

To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record. *See id.*; *Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008); *Chaves*, 630 S.W.3d at 555, 557–58. As the Texas Court of Criminal Appeals has emphasized, an appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant. *See Wolfe v. State*, 509 S.W.3d 325, 342–43 (Tex. Crim. App. 2017); *Busby*, 253 S.W.3d at 673; *see also Wyatt*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) ("We will not make appellant's arguments for him . . . ."). A brief that does not comply with Texas Rule of Appellate Procedure 38.1 presents nothing for an appellate court to review. *See Alvarado v. State*, 912 S.W.2d 199, 210 (Tex. Crim. App. 1995).

Although appellant, in his briefing, argues that the trial court erred in admitting the complainant's testimony from appellant's first trial under Texas Rule of Evidence 804(b)(1)(B), his brief contains no argument, explanation, substantive analysis, or citation to authorities to show that he was harmed by the trial court's purported erroneous admission.[16]  *See Wyatt*, 23 S.W.3d at 23 n.5 ("We will not make appellant's arguments for him . . . .").  Accordingly, we hold that appellant waived, due to inadequate briefing, his complaint that the trial court erred in admitting the complainant's testimony from appellant's first trial in violation of Texas Rule of Evidence 804(b)(1)(B).  *See, e.g.*, *Cardenas*, 30 S.W.3d at 393 (holding issue inadequately briefed where "appellant d[id] not address the question of whether the alleged error . . . was harmless"); *Chaves*, 630 S.W.3d at 557–58 (holding defendant waived complaint trial court erred in admitting certain evidence because appellant's brief "contain[ed] no argument, explanation, substantive analysis, or citation to authorities to show that he was harmed by the trial court's

---

[16]  Related to his first issue, roughly four pages of appellant's "argument" section in his brief is text that is copied and pasted from this Court's previous opinion involving appellant. *See, e.g.*, *Goode v. State*, No. 05-14-00651-CR, 2015 WL 3993222, at *2 (Tex. App.—Dallas July 1, 2015, pet. ref'd) (mem. op., not designated for publication) (holding appellant's briefing on issue inadequate where large portion of briefing consisted of just direct quotes of testimony).  But appellant's first appeal addressed an issue separate from appellant's complaint in this appeal concerning the admission of the complainant's former testimony under Texas Rule of Evidence 804(b)(1)(B). *See Wilson*, 451 S.W.3d at 883–89. Appellant does not cite to Texas Rule of Appellate Procedure 44.2 nor engage in any harm analysis related to his Texas Rule of Evidence 804(b)(1)(B) complaint.

purported erroneous admission of the [complained-of evidence]"); *Ford*, 2018 WL 1473948, at *6; *Wilson*, 473 S.W.3d at 900–01 (defendant waived complaint trial court erred in admitting certain evidence where he failed to "identify[] the harm that he suffered as a result of the admission of the complained-of evidence").

Appellant next argues that the trial court erred in admitting into evidence at appellant's retrial the complainant's testimony from appellant's first trial because appellant was deprived his constitutional right to cross-examine the complainant. *See* U.S. CONST. amend. VI; *see also Render v. State*, 347 S.W.3d 905, 917 (Tex. App.—Eastland 2011, pet. ref'd) (explaining "[w]hether a statement is admissible under the rules of evidence and whether that same statement is admissible under the Confrontation Clause are separate questions").

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *see also Sohail v. State*, 264 S.W.3d 251, 258 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("A defendant has a constitutional right to confront and cross-examine the witnesses against him."). The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him and the right to conduct cross-examination. *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *see also Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (Confrontation Clause "guarantees

24

[a] defendant a face-to-face meeting with witnesses appearing before the trier of fact"). The Confrontation Clause bars admission of a witness's prior testimony unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005).

Even if we presumed for purposes of this opinion that the trial court erred in admitting the complainant's testimony from appellant's first trial because the admission violated appellant's Sixth Amendment right to cross-examine "the witnesses against him," we must still perform a harm analysis and determine whether appellant was harmed by the admission of the complainant's former testimony. *See, e.g.*, *Henriquez v. State*, 580 S.W.3d 421, 429 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *Render*, 347 S.W.3d at 918–20.

If the erroneous admission of evidence constitutes a violation of a defendant's rights under the Confrontation Clause, it is constitutional error, and we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *Henriquez*, 580 S.W.3d at 429; *Gutierrez v. State*, 516 S.W.3d 593, 599 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Render*, 347 S.W.3d at 918. In conducting the harm-analysis, the critical inquiry is not whether the evidence supported the verdict absent the erroneously admitted evidence, but rather "the likelihood that the

25

constitutional error was actually a contributing factor in the jury's deliberations." *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); *see also Henriquez*, 580 S.W.3d at 429. We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). While our review must focus on the error and its effect, "the presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm." *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). In determining if the constitutional error may be declared harmless beyond a reasonable doubt, we may consider: (1) how important the out-of-court statement was to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the State's case. *Scott*, 227 S.W.3d at 690; *Gutierrez*, 516 S.W.3d at 599.

Appellant fails to assert in his briefing that he was harmed by the admission, over his Confrontation-Clause objection, of the complainant's testimony from appellant's first trial. *See Petriciolet*, 442 S.W.3d at 653–55 (even if trial court improperly admitted evidence, appellate court must still determine whether defendant was harmed by erroneous admission); *see, e.g.*, *Cardenas*, 30 S.W.3d at

26

393 (holding defendant waived complaint on appeal because he inadequately briefed issue by failing to address whether trial court's alleged error was harmless); *White v. State*, No. 01-20-00238-CR, 2022 WL 2674214, at \*7–9 (Tex. App.—Houston [1st Dist.] July 12, 2022, no pet.) (mem. op., not designated for publication) (holding defendant's challenge to testimony based on Confrontation Clause waived because defendant "fail[ed] to address in any way how he was harmed by its admission, an element he [was] required to establish on appeal"); *Bradshaw v. State*, No. 01-19-00611-CR, 2020 WL 7062589, at \*5 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet.) (mem. op., not designated for publication) (defendant waived Confrontation-Clause complaint where he failed to argue he was harmed by allegedly erroneous admission of evidence); *Crawford v. State*, 595 S.W.3d 792, 801 (Tex. App.—San Antonio 2019, pet. ref'd) (holding defendant waived complaint trial court erred in admitting certain testimony that violated his right to confrontation because defendant "d[id] [not] explain how he was harmed as a result"); *Wilson*, 473 S.W.3d at 900–01 ("Here, we do not address whether the trial court erred in admitting the complained-of . . . evidence because even were we to conclude that the trial court erred in admitting such evidence, appellant, in his brief, does not argue that he was harmed by its admission.").

To assert an issue on appeal, an appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities

and to the record." TEX. R. APP. P. 38.1(i).  An appellant waives an issue on appeal if he does not adequately brief that issue by not providing supporting arguments, substantive analysis, and appropriate citations to authorities and to the record.  *See id.*; *Lucio*, 351 S.W.3d at 896–97; *Busby*, 253 S.W.3d at 673; *Chaves*, 630 S.W.3d at 555, 557–58.  As the Texas Court of Criminal Appeals has emphasized, an appellate court has no obligation to construct and compose issues, facts, and arguments with appropriate citations to authorities and the record for the appellant. *See Wolfe*, 509 S.W.3d at 342–43; *Busby*, 253 S.W.3d at 673; *see also Wyatt*, 23 S.W.3d at 23 n.5 ("We will not make appellant's arguments for him . . . .").  A brief that does not comply with Texas Rule of Appellate Procedure 38.1 presents nothing for an appellate court to review.  *See Alvarado*, 912 S.W.2d at 210.

Although appellant, in his briefing, argues that the trial court erred in admitting the complainant's testimony from appellant's first trial in violation of his Sixth Amendment right to cross-examine, his brief contains no argument, explanation, substantive analysis, or citation to authorities to show that he was harmed by the trial court's purported erroneous admission.[17] *See Wyatt*, 23 S.W.3d at 23 n.5 ("We will not make appellant's arguments for him . . . .").  Accordingly,

---

[17]     In his brief, appellant devotes only a single analysis paragraph to his complaint that the trial court's admission of the complainant's former testimony "deprived [appellant] of his right to cross-examination."  Appellant again does not cite to Texas Rule of Appellate Procedure 44.2 nor engage in any harm analysis related to his Confrontation-Clause complaint.

we hold that appellant waived, due to inadequate briefing, his complaint that the trial court erred in admitting the complainant's testimony from appellant's first trial in violation of his Sixth Amendment right to cross-examine. *See, e.g.*, *Cardenas*, 30 S.W.3d at 393 (holding issue inadequately briefed where "appellant d[id] not address the question of whether the alleged error . . . was harmless"); *Chaves*, 630 S.W.3d at 557–58 (holding defendant waived complaint trial court erred in admitting certain evidence because appellant's brief "contain[ed] no argument, explanation, substantive analysis, or citation to authorities to show that he was harmed by the trial court's purported erroneous admission of the [complained-of evidence]"); *Ford*, 2018 WL 1473948, at *6; *Wilson*, 473 S.W.3d at 900–01 (defendant waived complaint trial court erred in admitting certain evidence where he failed to "identify[] the harm that he suffered as a result of the admission of the complained-of evidence").

## Modification of Judgment

Here, the trial court's written judgment does not accurately comport with the record in this case in that it states that the jury assessed appellant's punishment at confinement for forty years and a fine of "$10,100.00." The record, however, shows that the jury assessed appellant's punishment at confinement for forty years and a fine of $10,000.

"[A]ppellate court[s] ha[ve] the power to correct and reform a trial court judgment 'to make the record speak the truth when [they] ha[ve] the necessary data and information to do so[] or make any appropriate order as the law and nature of the case may require.'" *Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (quoting *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet ref'd)). This is true no matter who, or if anyone, has called the matter to the attention of the appellate court. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see also Asberry*, 813 S.W.2d at 529–30 ("The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court.").

Accordingly, we modify the trial court's judgment to reflect that a "$10,000.00" fine was assessed by the jury against appellant. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *see also Contreras v. State*, Nos. 05-13-00752-CR, 05-13-00753-CR, 2015 WL 3554086, at *2–3 (Tex. App.—Dallas June 8, 2015, pet. ref'd) (mem. op., not designated for publication) (modifying trial court's written judgment to reflect $10,000 fine assessed by jury).

## Conclusion

We affirm the judgment of the trial court as modified.


Julie Countiss
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

Do not publish.  TEX. R. APP. P. 47.2(b).